# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

**CHRISTOPHER G. KARAKOSTAS,**

    *Plaintiff,*

       v.

**PIPEFITTERS ASSOCIATION, INC.,
a.k.a, UNITED ASSOCIATION OF
PIPEFITTERS LOCAL 537,**

**PIPEFITTERS CHARITABLE FUND, INC.,
a.k.a, UNITED ASSOCIATION OF
PIPEFITTERS LOCAL 537 EDUCATION
TRUST,**

**DANIEL E. COADY,** *in his personal and official
capacity* **as OFFICER OF
PIPEFITTERS ASSOCIATION, INC.,
a.k.a, UNITED ASSOCIATION OF
PIPEFITTERS LOCAL 537,**

**THOMAS P. KERR, JR.,** *in his personal and
official capacity* **as OFFICER OF
PIPEFITTERS ASSOCIATION, INC.,
a.k.a, UNITED ASSOCIATION OF
PIPEFITTERS LOCAL 537, and as
BOARD MEMBER OF
PIPEFITTERS CHARITABLE FUND, INC.,
a.k.a, UNITED ASSOCIATION OF
PIPEFITTERS LOCAL 537 EDUCATION
TRUST,**

**DANIEL T. O'BRIEN,** *in his personal and
official capacity* **as BOARD MEMBER OF
PIPEFITTERS CHARITABLE FUND, INC.,
a.k.a, UNITED ASSOCIATION OF
PIPEFITTERS LOCAL 537 EDUCATION
TRUST,**

**PAUL R. CAMPBELL***, in his personal and
official capacity* **as BOARD MEMBER OF**

Docket No.:

**COMPLAINT**

1

**PIPEFITTERS CHARITABLE FUND, INC.,**
**a.k.a, UNITED ASSOCIATION OF**
**PIPEFITTERS LOCAL 537 EDUCATION**
**TRUST,**

**JAMES M. O'BRIEN,** *in his personal and official*
*capacity* **as BOARD MEMBER OF**
**PIPEFITTERS CHARITABLE FUND, INC.,**
**a.k.a, UNITED ASSOCIATION OF**
**PIPEFITTERS LOCAL 537 EDUCATION**
**TRUST,**

**and**

**PAUL MCGRATH,** *in his personal and official*
*capacity* **as TRAINING COORDINATOR OF**
**PIPEFITTERS CHARITABLE FUND, INC.,**
**a.k.a, UNITED ASSOCIATION OF**
**PIPEFITTERS LOCAL 537 EDUCATION**
**TRUST**

    *Defendants.*

---

Christopher G. Karakostas ("**Mr. Karakostas**"), by and through counsel and for his Complaint against Defendants, hereby states as follows:

## INTRODUCTION

1.    For the past four years, Mr. Karakostas has worked as an apprentice for Pipefitters Charitable Fund, Inc., as a union member of Pipefitters Association, Inc., while taking courses at the Pipefitter Charitable Fund, Inc., Training Center. He completed approximately four years of a five-year apprenticeship program to become a journeyman with the Union Pipefitters Association, Inc.

2.    Mr. Karakostas was raised in the Greek Orthodox Church, and he is a Christian. As a Christian who believes he has been redeemed by the life, death, and resurrection of Jesus Christ,

Mr. Karakostas is bound by the laws of God and not man. Receiving a vaccine, including the COVID-19 vaccine, violates Mr. Karakostas' sincerely held religious beliefs. Mr. Karakostas is now compelled to bring this action because Defendants severely damaged his career and future earning potential by discriminating against him based on his religion.

3.     Mr. Karakostas submitted his request for a religious exemption on October 28, 2021 to Mr. Paul McGrath, Training Coordinator for the Pipefitters Charitable Fund, Inc., Training Center.

4.     Upon information and belief, Mr. Karakostas' request for a religious exemption was verbally denied by Mr. McGrath on or about November 1, 2021, who gave no justification or explanation for the denial.

5.     Weeks later, counsel for Defendant Pipefitter Charitable Fund, Inc., communicated on November 17, 2021 that Mr. Karakostas did not describe a religious practice or identify a religion he is affiliated with.

6.     Mr. Karakostas filed a charge of discrimination on December 13, 2021 with the U.S. Equal Employment Opportunity Commission (the "**EEOC**"). He received a Notice of Right to Sue letter on December 15, 2021. On January 19, 2022, over one month after Mr. Karakostas obtained the Notice of Right to Sue letter, Defendant Pipefitter Charitable Fund, Inc., communicated, through counsel, that Mr. Karakostas did not qualify for a religious exemption and that it was an undue burden to grant Mr. Karakostas an accommodation.

7.     Defendants never took Mr. Karakostas' request for an accommodation seriously. Defendants' original notice informing its apprentices of the vaccine mandate did not provide information on requesting medical or religious exemptions. When Mr. Karakostas inquired about a religious exemption, Ms. Christine Harkins, an employee of the Pipefitter Charitable Fund, Inc.,

Training Center, informed him that *no exemption requests were allowed*. Despite Mr. Karakostas providing a detailed explanation of his faith and additional information regarding his faith practices and observations at the request of Defendant Pipefitter Charitable Fund, Inc., it attacked the sincerity of his faith. It told Mr. Karakostas that he does not qualify for an exemption.

8.      It was only on the eve of his termination on or about late-January 2022, over a month after he obtained a Notice of Right to Sue letter, that Defendants offered Mr. Karakostas an eight-month leave of absence with no assurance that he would be permitted to return to work, and continued to insist the Mr. Karakostas did not qualify for reasonable accommodation pursuant to Title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000e *et seq*. ("**Title VII**").

9.      Defendants' concerted actions violate Title VII, the Massachusetts Fair Employment Practices Act (M.G.L. c. 151B, *et seq*.) ("**FEPA**"), and common law principles of contract law. Mr. Karakostas now brings this action to recover for the damage that Defendants' discriminatory actions caused to him.

## JURISDICTION AND VENUE

10.      The Court has subject matter jurisdiction pursuant to 42 U.S.C. §§ 2000e-2, 2000e-5(f)(3), 42 U.S.C. § 1985(3), and 28 U.S.C. §§ 1331, 1343 because this action arises under federal law.

11.      This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367, for state law claims under M.G.L. c. 151B, §4, because such claims stem from part of the same case or controversy arising from a common nucleus of operative fact.

12.      Venue is proper in this district as Defendants operate corporate headquarters in this district, and one or more of Defendants' acts and those events complained of occurred herein, pursuant to 28 U.S.C. § 1391.

13.     This Court is authorized to grant Mr. Karakostas declaratory and injunctive relief pursuant to 28 U.S.C. §§ 2201 and 2202.

14.     This Court is authorized to grant Mr. Karakostas' prayer for relief regarding costs, including reasonable attorney's fees, pursuant to 42 U.S.C. § 1988; 42 U.S.C. § 2000e-5(k); and M.G.L. c. 151B, § 9.

**PARTIES**

15.     Mr. Karakostas is a citizen and resident of Merrimack County, New Hampshire.

16.     Defendant Pipefitters Charitable Fund, Inc., (a.k.a., United Association of Pipefitters Local 537 Education Trust) ("**Local 537 Education Trust**"), is an affiliate union and local chapter of United Association of Pipefitters and is located in Suffolk County, Massachusetts, in the District of Massachusetts, and with offices at 40 Enterprise Street, Dorchester, MA 02125.

17.     Defendant Pipefitters Association, Inc., (a.k.a, United Association of Pipefitters Local 537) (the "**Union**"), is responsible for the apprenticeship program for the local chapter of United Association of Pipefitters and is located in Suffolk County, Massachusetts, in the District of Massachusetts, and with offices at 40 Enterprise Street, Dorchester, MA 02125.

18.     The Local 537 Education Trust Board (the "**Board**") includes Defendants Daniel T. O'Brien, Paul R. Campbell, Thomas P. Kerr Jr., and James O'Brien. It is responsible for overseeing the Union apprenticeship program. On information and belief, the Board made the ultimate decision to implement the COVID-19 vaccine mandate for the Union's apprentices.

19.     On information and belief, Defendant Daniel E. Coady ("**Defendant Coady**") is an Officer or the President of the Union. Defendant Coady is a signatory of the Union Constitution and By-laws as a member of the By-Law Committee. Per the Union website, Defendant Coady is the President and Delegate for the New England States Pipe Trades Convention. Defendant Coady

is listed as an officer in the annual report to the Commonwealth of Massachusetts dated November 1, 2021. In a Certificate of Change of Directors or Officers to the Commonwealth of Massachusetts dated August 6, 2020, "Daniel E. Coady" is listed as a Director of Defendant Local 537 Education Trust with his term expiring in 2022. Defendant Coady resides in the District of Massachusetts.

20.     On information and belief, Defendant Thomas P. Kerr, Jr. ("**Defendant Kerr**") is an Officer or the President of Defendant Union. In the annual report to the Commonwealth of Massachusetts dated November 1, 2021, "Thomas Kerr" is listed as the President of Defendant Union. In a Certificate of Change of Directors or Officers to the Commonwealth of Massachusetts dated August 6, 2020, Defendant Kerr is listed as the President and a Director of Defendant Local 537 Education Trust with his term expiring in 2022. Per the Union website, Defendant Kerr is listed as Business Manager and Trustee of Pension Fund, Health & Welfare, and Educational. Defendant Kerr resides in the District of Massachusetts.

21.     According to the Union Constitution and By-Laws, the President of the Union is charged with having "a general supervisory control over all matters pertaining to the welfare of the Local Union."

22.     On information and belief, Defendant Daniel T. O'Brien ("**Defendant D.T. O'Brien**") is a member of the Board. Defendant O'Brien is a signatory of the Union Constitution and By-laws as a member of the By-Law Committee. In the annual report to the Commonwealth of Massachusetts dated November 1, 2021, Defendant D.T. O'Brien is listed as a Director of Defendant Union. In a Certificate of Change of Directors or Officers to the Commonwealth of Massachusetts dated August 6, 2020, Defendant D.T. O'Brien is listed as the Treasurer and a Director of Defendant Local 537 Education Trust, with his term expiring in 2022. Per the Union

website, Defendant D.T. O'Brien is listed as Business Agent at-Large and Trustee of Health & Welfare, and Educational. Defendant D.T. O'Brien resides in the District of Massachusetts.

23.     On information and belief, Defendant Paul R. Campbell ("**Defendant Campbell**") is a member of the Board. In the annual report to the Commonwealth of Massachusetts dated November 1, 2021, Defendant Campbell is listed as a Director of Defendant Union. Per the Union website, Defendant Campbell is listed as Assistant Business Manager and Trustee of Pension Fund, Health & Welfare, and Educational. Defendant Campbell resides in the District of Massachusetts.

24.     On information and belief, Defendant James O'Brien ("**Defendant J. O'Brien**") is a member of the Board.  In the annual report to the Commonwealth of Massachusetts dated November 1, 2021, Defendant J. O'Brien is listed as a Director of Defendant Union. Per the Union website, Defendant J. O'Brien is listed as Business Agent - Parent Body and Trustee of Pension Fund and Educational. Defendant J. O'Brien resides in the District of Massachusetts.

25.     Defendant Paul McGrath ("**Defendant McGrath**") works as the Training Coordinator for the Local 537 Training Center ("**Training Center**") and is responsible for directly overseeing the Union apprentices and implementing the Board's policies. On information and belief, Defendant McGrath was involved, along with the Board, in the decision to implement the COVID-19 vaccine mandate for the Union's apprentices. Defendant McGrath resides in the District of Massachusetts.

26.     On information and belief, Defendant Trustees make decisions for the Union and Local 537 Education Trust as if it is one entity, despite the Union and Local 537 Education Trust being registered as separate business entities with the Commonwealth of Massachusetts.

27.     On information and belief, Defendants frequently change leadership roles within and among the Union and Local 537 Education Trust; however, Defendant Trustees maintain

significant influence and authority over the day-to-day operations of the Union and Local 537 Education Trust.

28.     Defendant Union employs more than 15 employees.

29.     Defendant Local 537 Education Trust employs more than 15 employees.

30.     Defendant Union is a "labor organization" within the meaning of Title VII. *See Frontiero v. Richardson,* 411 U.S. 677, 687 (1973).

31.     Defendant Union is a "labor organization" within the meaning of M.G.L. c. 151B, § 4. *See Hussey v. E. Coast Slurry Co., LLC,* No. 20-11511-MPK1, 2022 U.S. Dist. LEXIS 35444 (D. Mass. Mar. 1, 2022).

32.     Title VII applies to Union apprenticeships and training. *See Loc. 28 of Sheet Metal Workers' Int'l Ass'n v. E.E.O.C.,* 478 U.S. 421 (1986).

33.     M.G.L. c. 151B, § 4 applies to Union apprenticeships and training. *See Hussey v. E. Coast Slurry Co., LLC,* No. 20-11511-MPK1, 2022 U.S. Dist. LEXIS 35444 (D. Mass. Mar. 1, 2022).

34.     All of the above paragraphs are incorporated into the following factual averments and claims as if fully set forth therein. Likewise, each of the following facts are incorporated into all of the others as if fully set forth therein.

## FACTUAL ALLEGATIONS
### Mr. Karakostas' Religious Beliefs

35.    Mr. Karakostas is a Christian. He celebrates the life of Jesus Christ, teaches his children the teachings of Christ in the Bible, prays daily, celebrates all of the Christian holidays with his family, and incorporates his faith into all aspects of his life. Mr. Karakostas' sincere religious beliefs prevent him from receiving the COVID-19 vaccine. He submitted a statement to Defendant McGrath on October 28, 2021 describing his beliefs and practices in detail and why they prevented him from receiving the COVID-19 vaccine.

36.    At counsel for the Local 537 Education Center's request, Mr. Karakostas submitted additional information regarding his religious observances and practices on January 4, 2022.

### Mr. Karakostas' Employment with Defendants

37.    Prior to being accepted for the Local 537 Education Trust apprenticeship, Mr. Karakostas served as a Marine Corps Fixed-Wing Aircraft Safety Equipment Mechanic for five years in the United States Marine Corps, where he deployed to Kuwait in support of Operation Inherent Resolve.

38.    Mr. Karakostas was accepted into the Local 537 Education Trust apprenticeship through the United Association Veterans in Piping program.

39.    Mr. Karakostas was employed as an apprentice for Local 537 Education Trust from May 7, 2018, through on or around January or February 2022. He completed approximately four years of a five-year apprenticeship program to become a journeyman with the Union.

40.    Mr. Karakostas was a member of the Union from on or around May 7, 2018, through on or around January or February 2022.

41.     Mr. Karakostas received no complaints regarding his job performance from Defendants. Additionally, Mr. Karakostas has had no disciplinary or adverse administrative records throughout his four years as an apprentice.

**The COVID-19 Pandemic**

42.     By the Spring of 2020, the coronavirus, SARS-CoV-2, had spread to many nations, including the United States.

43.     Around that time, Defendants began implementing certain mitigation procedures for the apprenticeship program, including remote learning, mask wearing, maintaining minimum distances from other workers, and symptom screening.

44.     Since then, three separate COVID-19 vaccines have been developed and authorized or approved by the United States government for use.

45.     On August 23, 2021, the FDA issued full approval of the Pfizer-BioNTech vaccine (Comirnaty) for persons 16 years of age and older. On January 31, 2022, the FDA issued full approval of the Moderna vaccine (Spikevax) for persons 18 years of age and older.

**Defendants' Vaccine Mandate**

46.     On August 10, 2021, Christine Harkins ("**Ms. Harkins**"), an employee of the Training Center, sent an email to Mr. Karakostas with an attachment titled "Orientation Notice." Contained in the Orientation Notice was the Union's COVID-19 vaccine mandate:

> **Covid-19** – Classes will be 100% in person. The Education Trust has mandated that **all Apprentices must be vaccinated against Covid-19 by October 31, 2021.** Please send a copy of your Vaccination Record as soon as possible. Any Apprentice that is not vaccinated or has failed to provide a copy of their Vaccination Record, by October 31, 2021, will be placed on a Leave of Absence from the program. Our goal is for vaccinated individuals to not have to wear masks, but please have them with you until we can be sure all are vaccinated.

47.     Local 537 allowed unvaccinated apprentices to attend classes from September 9, 2021, through October 31, 2021.

48.     Local 537's mandate does not apply to journeymen members of the Union. It only applies to those members currently in the apprenticeship program.

**Mr. Karakostas' Request for a Religious Exemption**

49.     Mr. Karakostas has sincerely held Christian religious beliefs and convictions that directly conflict with receiving the COVID-19 vaccines.

50.     On August 10, 2021, the same day the policy was announced, Mr. Karakostas requested information via email from Ms. Harkins regarding obtaining a religious exemption from the COVID-19 vaccine mandate. On August 11, 2021, Ms. Harkins notified Mr. Karakostas via email that "[t]he members of the Education Trust did not give us *any allowance* for exemptions" to the COVID-19 vaccine mandate. (Emphasis added).

51.     Based on Ms. Harkins' representation that Defendants refused to accept exemption requests, Mr. Karakostas sought legal counsel.

52.     Mr. Karakostas continued to attend in-person instruction at the Local 537 Training Center until he tested positive for the SARS-CoV-2 virus on October 24, 2021. He was thereafter granted a temporary medical exemption from the COVID-19 vaccine for ninety days, allowing him to continue attending in-person instruction beyond the October 31, 2021 vaccination deadline. However, the 90-day medical exemption expired on January 26, 2022.

53.     On October 26, 2021, Mr. Karakostas received a call from the Training Center requesting his vaccination status. Upon information and belief, during this conversation, Mr. Karakostas was informed, for the first time, that he could submit a medical or religious exemption. This information was in complete contradiction to the prior communication from Local 537. In

11

addition, Ms. Harkins informed Mr. Karakostas that a signature from a religious leader was required before Defendants would consider the request. Mr. Karakostas confirmed this requirement via phone with the Local 537 Training Coordinator, Mr. Paul F. McGrath.

54.     On October 27, 2021, Mr. Karakostas received the official Local 537 form for a request for religious exemption from the Training Center. He was informed that the deadline to submit the exemption request was October 29, 2021. Accordingly, Defendants provided Mr. Karakostas with less than two days to complete and submit his request for a religious exemption.

55.     On October 28, 2021, Mr. Karakostas submitted his religious exemption request with a cover letter from Siri & Glimstad via email to Ms. Harkins and Mr. McGrath. In his statement of religious beliefs, Mr. Karakostas articulated why receiving the COVID-19 vaccine was incompatible with his sincerely held Christian religious beliefs.

### Denial of Exemption Request

56.     On or about November 1, 2021 – approximately three days after submitting his exemption request – Mr. McGrath verbally notified Mr. Karakostas that his religious exemption request was denied.

57.     On November 17, 2021, Mr. Paul Kelly, attorney for Local 537, sent a letter dated November 9, 2021 that included the formal denial of Mr. Karakostas' religious exemption. The letter stated that Mr. Karakostas "describes no religious practice and identifies no religion with which he is affiliated. Rather he aligns his faith in God with his opposition to vaccines generally."

58.     Prior to Mr. Kelly's November 9, 2021 letter, neither Defendants nor Mr. Kelly asked Mr. Karakostas about his religious practices or affiliated religion, his reasons for seeking accommodations, or any additional information regarding his religious beliefs. There was no objective basis to doubt the sincerity of Mr. Karakostas' beliefs or that his beliefs were not

religious in nature. Thus, Defendants' doubts regarding the sincerity of Mr. Karakostas' beliefs were entirely based on Defendants' ill-informed assumptions and religious animosity.

59.     Upon information and belief, in November 2021, Cory Collins, a Union journeyman who is an instructor for the Local 537 Training Center, asked Mr. Karakostas why he "was not going to get vaccinated" and referred to Mr. Karakostas as a "special one," or words to that effect.  The journeyman further commented that the business manager was probably "pissed" and that the journeyman bets money "they" will make Mr. Karakostas start as a year-one apprentice if they ever let him back. Finally, the journeyman remarked that Mr. Karakostas had received vaccines in the military, implying that if Mr. Karakostas had received mandatory vaccines in the past, he could not have a sincere religious objection now.

60.     On December 2, 2021, Siri & Glimstad LLP sent a letter to Mr.  Kelly requesting a conference call to reach an amicable resolution.

61.     In a December 15, 2021 email, Mr. Kelly indicated that "The Trustees" preferred to communicate in writing. Mr. Karakostas, through counsel, responded on the same day, requesting accommodation for his religious beliefs and reiterating that he was open to various reasonable accommodations for risk mitigation.

62.     On December 21, 2021, over a month after Defendants denied Mr. Karakostas' request for a religious exemption, Mr. Kelly emailed Siri & Glimstad to inquire whether "there [is] any other practice or observance associated with [Mr. Karakostas'] religious belief apart from avoiding vaccinations."

63.     On January 4, 2021, Siri & Glimstad emailed Mr. Kelly a supplemental statement from Mr. Karakostas giving additional details about and insight into his religious beliefs, practices, and observances. The supplemental statement was provided to Mr. Kelly to address Defendants'

assumptions and false statements about Mr. Karakostas' beliefs as alleged in its November 9, 2021 letter. Even in light of Mr. Karakostas rectifying their false assertion about the sincerity of his beliefs, Defendants did not grant Mr. Karakostas the exemption. This provides additional evidence that Defendants' justification for its denial was merely a pretext for discriminating against Mr. Karakostas based on his faith.

64.    On January 19, 2022, Mr. Kelly informed Siri & Glimstad that "the Trustees" authorized Mr. Karakostas to take a leave of absence from the program until September 2022 "as an accommodation to his preference not to be vaccinated" but noted that Local 537's position was that "Mr. Karakostas does not qualify for a religious exemption." Mr. Kelly then stated, for the first time, "[t]his accommodation is what has been available to other apprentices who have registered religious objections to the vaccination policy." Mr. Kelly cited the Omicron variant as the basis for the denial of the requested accommodation of masking and testing, indicating that it places "an undue burden [on Local 537 Education Trust] in that it would not sufficiently protect the health of the apprentices, the instructors and others who train, work and do business at the Training Center location . . ." Finally, Mr. Kelly indicated that the local construction industry where the apprentices work was increasingly requiring contractor employees to be vaccinated.

65.    Mr. Karakostas declined the leave of absence offered by Local 537 because taking a leave of absence would prevent him from providing for his family from January to September 2022. Furthermore, Local 537's position that Mr. Karakostas did not qualify for a religious exemption prevented Mr. Karakostas from the right to "reasonable" accommodation required by Title VII, thus allowing Defendants to arbitrarily refuse him access to the apprenticeship even after the leave of absence expired.

14

**Defendants Terminate Mr. Karakostas' Employment**

66.     Mr. Karakostas' temporary medical exemption expired on January 26, 2022.

67.     Mr. Karakostas did not receive the COVID-19 vaccination.

68.     On information and belief, Mr. Karakostas was terminated from his apprenticeship in late January or early February of 2022.

69.     On information and belief, Mr. Karakostas' membership with the Union was rescinded in late January or early February of 2022.

70.     On February 17, 2022, Mr. Karakostas received an email from "admin@pipefitters537.org" that stated, "[y]our account has been deleted. All your personal details and any uploads have been permanently removed."

71.     Mr. Karakostas' wife was informed by a representative of Blue Cross Blue Shield that the family health insurance coverage was canceled on February 28, 2022.

72.     Mr. Karakostas has never received a termination letter from the Union or Local 537 Education Trust.

73.     Mr. Karakostas has no disciplinary or adverse administrative records throughout his four years as an apprentice.

74.     The termination of Mr. Karakostas' apprenticeship and Union membership was not justified because Mr. Karakostas engaged in the protected activity of requesting a religious accommodation that Defendants wrongfully denied. Besides presenting an unpaid, arbitrary, and discriminatory extended leave of absence, Defendants failed to offer a single reasonable accommodation option or engage in good faith in the interactive process.

75.     Defendants summarily denied Mr. Karakostas' accommodation requests without engaging in good faith discussions, and counsel for Local 537 refused requests by Siri & Glimstad for a conference call to find an amicable resolution.

### Defendants' Refusal to Accommodate

76.     By denying his religious exemption request, Defendants subjected Mr. Karakostas to disparate treatment and disparate impact discrimination based on his religious beliefs and practices.

77.     Defendant made no effort to engage in the interactive process to find a reasonable accommodation; thus, it lacks the evidence needed to meet its burden of proof to establish that Mr. Karakostas' proposed accommodation would actually have posed an undue hardship. *See, e.g.*, *Cloutier v. Costco Wholesale Corp.*, 390 F.3d 126, 132 (1st Cir. 2004) (stating that in situations where no reasonable accommodations were offered, an employer "may only prevail [an an undue burden defense] if it shows that no accommodation could have been made without undue hardship.); *EEOC v. Arlington Transit Mix, Inc.*, 957 F.2d 219, 222 (6th Cir. 1991) ("After failing to pursue [a voluntary waiver of seniority rights] or any other reasonable accommodation, the company is in no position to argue that it was unable to accommodate reasonably [plaintiff's] religious needs without undue hardship on the conduct of its business."); and *EEOC v. Ithaca Indus., Inc.*, 849 F.2d 116, 118-19 (4th Cir. 1988) (finding that employer's failure to attempt to accommodate, absent any showing of undue hardship, violated Title VII).

78.     The Training Center allowed unvaccinated students to attend classes from orientation beginning on September 8, 2021, through October 31, 2021, prior to the Local 537 COVID-19 vaccine mandate taking effect. Defendants refused to work in good faith to find a reasonable accommodation that allowed Mr. Karakostas to remain active in the apprenticeship.

79.     Regarding reasonable accommodation that would have allowed Mr. Karakostas to remain active in the apprenticeship, Defendants refused to consider that Mr. Karakostas had natural immunity to the SARS-CoV-2 virus.

80.     Defendant's refusal to work in good faith with Mr. Karakostas to find a reasonable accommodation that would have allowed him to remain active in the apprenticeship differs substantially from the European Union's digital COVID-19 certificate, which was active as of Mr. Karakostas' termination date. The EU Digital COVID Certificate considers each of the following as equivalent: (1) a COVID-19 vaccine; (2) a negative COVID-19 test; or (3) having previously recovered from COVID-19. *See* EU Digital COVID Certificate https://tinyurl.com/22tr76nm.

81.     Defendant's refusal to work in good faith with Mr. Karakostas to find a reasonable accommodation that would have allowed him to remain active in the apprenticeship disregards scientific evidence available to Defendants during the relevant times, confirming that a combination of mask-wearing and periodic testing is equivalent to (or better than) vaccination at preventing the spread of COVID-19. For example, a study published in November 2021 conducted by researchers at the University of Antwerp, Belgium, investigated the impact of different testing strategies on the SARS-CoV-2 infection dynamics in a primary school environment where vaccination is not available found that repetitive testing policies can significantly reduce the attack rate in schools. *See* Torneri, Andrea, *et al., Controlling SARS-CoV-2 in schools using repetitive testing strategies,* MedRxiv (November 15, 2021), *available at* https://www.medrxiv.org/content/10.1101/2021.11.15.21266187v1.full.pdf.

82.     Defendants never asked Mr. Karakostas if he was willing to pay for his COVID-19 testing, which would have alleviated any financial hardship to Local 537 Education Trust.

83.     Defendants never offered a reasonable accommodation to Mr. Karakostas with the condition that he find an employer willing to allow him on-site while being unvaccinated, a requirement that he could have met.

84.     In its denial, Defendants claim that "the local construction industry where the apprentices work was increasingly requiring contractor employees to be vaccinated;" however, this is contradicted by Mr. Karakostas working for American Refrigeration Company for the entire duration of his apprenticeship with no vaccine requirement. In fact, on information and belief, Union journeymen, who are not required by the Union to be vaccinated against COVID-19, also work at American Refrigeration Company.

85.     Defendant's refusal to work in good faith with Mr. Karakostas to find a reasonable accommodation that would have allowed him to remain active in the apprenticeship disregards the EEOC guidance that periodic testing and masking is a reasonable accommodation for those holding sincere religious beliefs that make it impossible for them to receive the COVID-19 vaccine. *See What You Should Know About COVID-19 and the ADA, the Rehabilitation Act, and Other EEO Laws,* U.S. Equal Employment Opportunity Commission  (May 28, 2021), *available at* https://www.eeoc.gov/wysk/what-you-should-know-about-covid-19-and-ada-rehabilitation-act-and-other-eeo-laws (stating that, "as a reasonable accommodation, an unvaccinated employee entering the workplace might wear a face mask, work at a social distance from coworkers or non-employees, work a modified shift, get periodic tests for COVID-19, be given the opportunity to telework, or finally, accept a reassignment.")

86.     Mr. Karakostas was willing to regularly test at his own expense, wear a mask at all times when in the Local 537 Training Center, undergo daily symptom screening, and social distance. However, the Defendants determined no accommodations were available that did not

constitute an undue hardship, despite the data available in December 2021 that concluded that the vaccines were largely ineffective in neutralizing the Omicron variant. *See* Wilhelm, Alexander *et al., Reduced Neutralization of SARS-CoV-2 Omicron Variant by Vaccine Sera and monoclonal antibodies,* medRxiv (December 7, 2021), *available at* https://www.medrxiv.org/content/10.1101/2021.12.07.21267432v1.

87.    Defendants only offered Mr. Karakostas an illusory "accommodation," which amounted to an arbitrary unpaid and indefinite leave of absence, with no defined metrics as to when Mr. Karakostas could resume and complete his apprenticeship and with no Title VII protection regarding the reasonableness of the "accommodation."

88.    Defendants knew that Mr. Karakostas recovered from a prior SARS-CoV-2 infection because he was granted a temporary medical exemption. Natural immunity is more robust and durable than immunity from vaccination. *See, e.g.,* Turner, Jackson S., *et al., SARS-CoV-2 infection induces long-lived bone marrow plasma cells in humans,* Nature (MedRxiv) (May 24, 2021), *available at* https://pubmed.ncbi.nlm.nih.gov/34030176/. Yet, Defendants refused to consider Mr. Karakostas' natural immunity at all relevant times.

89.    According to data from the CDC website, during the prominence of the Omicron variant in the United States, the week of January 11, 2022 saw the highest number of cases in Massachusetts, with a 7-day moving average of over 24,000 cases statewide. Since that date, the cases have steadily declined. The week Mr. Karakostas was terminated, the 7-day moving average was just over 10,000 cases statewide, with a steady decline to the present day. *See COVID Data Tracker,* Centers for Disease Control and Prevention, *available at* https://covid.cdc.gov/covid-data-tracker/#datatracker-home.

90.     According to data from the CDC website, data on January 26, 2022, the date Mr. Karakostas' temporary medical exemption expired and his last day working as a Local 537 apprentice, 94.5% of the Massachusetts population had received at least one COVID-19 vaccine dose, 76.2% of the Massachusetts population were fully vaccinated, and 84.6% of the Massachusetts population of ages 18 and over were fully vaccinated. *See COVID Vaccinations in the United States,* Centers for Disease Control and Prevention, *available at* https://data.cdc.gov/Vaccinations/COVID-19-Vaccinations-in-the-United-States-Jurisdi/unsk-b7fc/data.

**Defendants' Discriminatory and Retaliatory Actions Constitute a Breach of Contract, Breach of Promise, and Have Damaged Mr. Karakostas' Future Earning Potential and Has Caused Him Significant Monetary Damages**

91.     A valid contract existed between the parties. Defendants offered Mr. Karakostas a five-year apprenticeship program to become a journeyman with the Union. Mr. Karakostas accepted the offer with the consideration of four years of specific performance as an apprentice with the Local 537 Education Trust. Unfortunately, Mr. Karakostas has relied upon the agreement to his detriment.

92.     Defendants Coady and D.T. O'Brien signed the Constitution and By-Laws of the Union of 2018 and are members of the By-Law Committee.

93.     Each member and apprentice of Local 537 pledges that as a condition of membership in the Union, they agree to be governed by the Constitution and By-Laws. Mr. Karakostas signed this pledge at or near the time he commenced his apprenticeship.

94.     The United Association Constitution, Section 159, promises to "embrace and support[] the anti-discrimination laws of the United States."

95.     Defendants unlawfully discriminated against Mr. Karakostas based on his religious beliefs after Mr. Karakostas completed nearly four years of his contract, constituting a breach of the employment contract and preventing him from completing his five-year apprenticeship program to become a journeyman with the Union.

96.     Defendants' wrongful denial of Mr. Karakostas' accommodation request significantly damaged Mr. Karakostas' career and future earning potential.  Because the Union and Local 537 Education Trust terminated Mr. Karakostas, he has been essentially "blacklisted" and cannot work in the Union again, even if he were to obtain his journeyman certification from another entity. As a result, Mr. Karakostas will never earn as much as he would have earned as a journeyman in the Union. Thus, Defendants' actions have irreversibly damaged his career and future earning potential.

97.     Defendants' actions forced Mr. Karakostas to seek alternate employment. He currently works at Hussmann Corporation at a substantially reduced salary. As a fourth-year apprentice with Local 537, Mr. Karakostas made approximately $78.00 per hour, including benefits. He now makes $34.50 an hour with Hussmann as a fourth-year apprentice with no additional employment benefits.

98.     A journeyman with the Union typically earns approximately $95.00 per hour, including benefits, while a non-Union journeyman may earn approximately $45.00 per hour, depending on the specific employer.

99.     As a direct and proximate cause of Defendants' wrongful conduct alleged above, which was a substantial factor in the interference of Mr. Karakostas' ability to enjoy the benefits of his apprenticeship and future employment opportunities, Mr. Karakostas has suffered financial

damages in the amount subject to proof, but in any case, exceeding $1,000,000, the exact damage amount to be determined according to proof at the time of trial.

100.    As a direct and proximate result of Defendants' wrongful conduct alleged above, Mr. Karakostas has suffered and continues to suffer emotional distress, humiliation, mental anguish, and embarrassment, as well as the manifestation of physical symptoms as a result of the stress. Mr. Karakostas is informed and believes and thereupon alleges that he will continue to experience said physical and emotional suffering for a period in the future not presently ascertainable, all in an amount subject to proof at the time of trial.

**Exhaustion of Administrative Remedies**

101.    The U.S. Equal Employment Opportunity Commission, Boston area office, issued Mr. Karakostas a Notice of Right to Sue on December 15, 2021, in Charge No. 523-2022-01215.

**FIRST CAUSE OF ACTION**
**Violation of Title VII of the Civil Rights Act of 1964**
**42 U.S.C § 2000e,** *et seq.*
**Disparate Treatment on the Basis of Religion**

102.    Mr. Karakostas hereby realleges and adopts each and every allegation in the preceding paragraphs above as if fully set forth herein.

103.    Title VII prohibits discrimination against employees on the basis of their religion. 42 U.S.C. § 2000e(j); 42 U.S.C. § 2000e-2(a) ("It shall be an unlawful employment practice for an employer . . . to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment because of such individual's race, color, religion, sex, or national origin . . . . ").

104.    Title VII applies to labor organizations. Defendant Union is a labor organization. *See Frontiero v. Richardson,* 411 U.S. 677, 687 (1973).

105.    Title VII applies to Union apprenticeships and training. *See Loc. 28 of Sheet Metal Workers' Int'l Ass'n v. E.E.O.C.,* 478 U.S. 421 (1986).

106.    Title VII defines the protected category of religion to include "all aspects of religious observance and practice, as well as belief." 42 U.S.C. § 2000e(j).

107.    Employers should assume that an employee's belief is sincere. *See* EEOC Compliance Manual § 12-IV(A)(3) (January 15, 2021) https://www.eeoc.gov/laws/guidance /section-12-religious-discrimination ("Because the definition of religion is broad and protects beliefs, observances, and practices with which the employer may be unfamiliar, the employer should ordinarily assume that an employee's request for religious accommodation is based on a sincerely held religious belief.").

108.    The EEOC's "Employer's Best Practices" requires that an employer "individually assess each request and avoid assumptions or stereotypes about what constitutes a religious belief or practice or what type of accommodation is appropriate." *See* EEOC Compliance Manual (January 15, 2021) https://www.eeoc.gov/laws/guidance/section-12-religious-discrimination.

109.    Defendants' actions contradict EEOC guidance and "Best Practices" because Defendants immediately assumed that Mr. Karakostas' religious beliefs were insincere and refused Ms. Karakostas a meaningful opportunity to overcome its unlawful and discriminatory assumption.

110.    The EEOC recommends that employers engage in an interactive process regarding requests for religious accommodation. *See* EEOC Compliance Manual § 12-IV(A)(2) (January 15, 2021) https://www.eeoc.gov/laws/guidance/section-12-religious-discrimination#_ftnref221.

111.    By, *inter alia*, refusing to engage in the interactive process in good faith at all points, Defendants discriminated against Mr. Karakostas based on his sincerely held religious beliefs concerning the terms, conditions, and privileges of employment.

112.    Defendants have unlawfully discriminated against Mr. Karakostas by discharging him for exercising his religious beliefs.

113.    As outlined above, Mr. Karakostas has a sincerely held religious belief preventing him from receiving the COVID-19 vaccines.

114.    Mr. Karakostas' sincerely held religious beliefs conflict with Defendants' policies that require him to receive the COVID-19 vaccine.

115.    Mr. Karakostas formally notified Defendants of his religious beliefs by requesting a religious accommodation.

116.    Defendants' actions show a systemic and concerted pattern or practice of discrimination. On information and belief, Defendants have not accommodated any requests by apprentices of Local 537 Education Trust and Union members for a religious exemption.

117.    Defendants' termination, denial of benefits, and other adverse employment actions against Mr. Karakostas were motivated by, and are the result of, the exercise of his sincerely held religious beliefs.

118.    The Union journeymen members are not subject to a vaccine mandate even though they are similarly situated to Local 537 Education Trust apprentices and work for many of the same contractors. For example, Mr. Karakostas has worked for American Refrigeration Company alongside Union journeymen, who are not required to be vaccinated. By not subjecting the Union journeymen members to a vaccine mandate, the Defendants effectively accommodate Union members on non-religious grounds. The double standard also makes Defendants' refusal to accommodate Mr. Karakostas in a way that would allow him to remain in the apprenticeship arbitrary and discriminatory.

119.    Defendants' discrimination against Mr. Karakostas was intentional and performed with malice, willfulness, and reckless indifference to Mr. Karakostas' protected civil rights.

120.    Any justification offered by Defendants for their adverse employment actions is either false or insufficient to support the nature of the adverse employment actions taken.

121.    Defendants, therefore, violated Title VII, and Mr. Karakostas is entitled to the relief set out more fully below, including compensatory damages, back pay, front pay, compensation for benefits, past and future medical and counseling expenses to the extent any exist, interest, and reasonable attorneys' fees and costs of the action pursuant to 42 U.S.C. § 2000e-5(k).

122.    As a result of Defendants' intentional violation of the Title VII rights of Mr. Karakostas, he suffered anguish, humiliation, distress, inconvenience, and loss of enjoyment of life, thereby entitling him to compensatory damages.

123.    The events described here justify an award of punitive damages under Title VII.

124.    Defendants' refusal to consider or grant Mr. Karakostas' request for accommodation and exemption from the COVID-19 vaccine mandate has caused, is causing, and will continue to cause irreparable harm and actual and undue hardship on Mr. Karakostas' sincerely held religious beliefs.

125.    Mr. Karakostas has no adequate remedy at law for the continuing deprivation of his most cherished constitutional liberties and sincerely held religious beliefs.

126.    Mr. Karakostas is entitled to other such relief as this Court deems appropriate.

WHEREFORE, Mr. Karakostas respectfully prays for relief against Defendants as hereinafter set forth in his prayer for relief.

**SECOND CAUSE OF ACTION**
**Violation of Title VII of the Civil Rights Act of 1964**
**42 U.S.C § 2000e, *et seq.***
**Disparate Impact on the Basis of Religion**

127.    Mr. Karakostas hereby realleges and adopts each and every allegation in paragraphs 1-101 above as if fully set forth herein.

128.    Title VII makes it illegal for an employer to "limit, segregate, or classify his employees or applicants . . . in any way which would deprive or tend to deprive any individual of employment opportunities . . . because of such individual's . . . religion . . . . " 42 U.S.C. § 2000e-2(a)(2).

129.    Furthermore, Title VII provides that an unlawful employment practice based on disparate impact is established when either an employee shows that an employment policy causes such a disparate impact and the employer fails to show "that the challenged practice is job related . . . and consistent with business necessity," or the employee shows there is an alternative way to serve the stated needs, but the employer refuses it. 42 U.S.C. § 2000e-2(k)(1)(A).

130.    Even if facially neutral, Defendants' vaccination policy was enforced in a way that had a disparate impact on Mr. Karakostas by forcing him to abandon his religious obligation or forgo employment with Defendants.

131.    Defendants' refusal to recognize and accommodate Ms. Karakostas' sincere religious belief was neither required for Mr. Karakostas' job duties nor consistent with business necessity.

132.    Defendants improperly refused Mr. Karakostas a reasonable accommodation that would allow him to remain active in the apprenticeship and not constitute an undue burden, including testing, masking, and social distancing. Moreover, Mr. Karakostas was willing to undergo bloodwork to provide lab proof of natural immunity to the SARS-CoV-2 virus.

26

133.    As a direct and proximate result of this additional unlawful action by Defendants, Mr. Karakostas suffered lost income and other economic and non-economic damages.

WHEREFORE, Mr. Karakostas respectfully prays for relief against Defendants as hereinafter set forth in his prayer for relief.

### THIRD CAUSE OF ACTION
### Violation of Title VII of the Civil Rights Act of 1964
### 42 U.S.C § 2000e, *et seq.*
### Retaliation

134.    Mr. Karakostas hereby realleges and adopts each and every allegation in paragraphs 1-101 above as if fully set forth herein.

135.    42 U.S.C. 2000e-3(a) makes it unlawful for any person to retaliate against an employee who has opposed a discriminatory practice. Specifically, under 42 U.S.C. § 2000e-3: "It shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment, for an employment agency . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter."

136.    The "EEOC has taken the position that requesting a religious accommodation is a protected activity under this provision of Title VII." EEOC Compliance Manual § 12-IV(B) https://www.eeoc.gov/laws/guidance/section-12-religious-discrimination#_ftnref221.    Mr. Karakostas was discharged from the apprenticeship and the Union in retaliation for his protected activity, requesting a religious exemption accommodation, and filing a Charge of Discrimination with EEOC for unlawful discrimination in employment. *See Noviello v. Boston*, 398 F.3d 76, 96 (1st Cir. 2005).

137.    Mr. Karakostas filed a charge of discrimination against Defendants on December 15, 2021. Defendants took adverse employment action against Mr. Karakostas in late January or early February 2022. This adverse employment action included wrongfully terminating his employment contract, depriving him of financial compensation pursuant to same, and black-listing him from the Union. These actions intentionally interfere with Mr. Karakostas' prospective economic advantage.

138.    Defendants' actions constitute unlawful retaliation in violation of Title VII.

139.    Defendants lacked any justification for the adverse employment actions taken against Mr. Karakostas and said actions were neither based on job-related rationale nor consistent with business necessity.

140.    Defendants' discrimination against Mr. Karakostas was intentional and performed with malice, willfulness, and reckless indifference to Mr. Karakostas' protected civil rights.

141.    Any justification offered by Defendants for their adverse employment actions is either false or insufficient to support the nature of the adverse employment actions taken.

142.    By the aforesaid acts and conduct of Defendants, and each of them, Mr. Karakostas has been directly and legally caused to suffer actual damages, as set out more fully below, including compensatory damages, back pay, front pay, compensation for benefits, past and future medical and counseling expenses to the extent any exist, interest, and reasonable attorneys' fees and costs of the action pursuant to 42 U.S.C. § 2000e-5(k).

143.    As a result of Defendants' intentional violation of the Title VII rights of Mr. Karakostas, he suffered anguish, humiliation, distress, inconvenience, and loss of enjoyment of life, thereby entitling him to compensatory damages.

144.    The events described here justify an award of punitive damages under Title VII.

145.    Mr. Karakostas is entitled to other such relief as this Court deems appropriate.

WHEREFORE, Mr. Karakostas respectfully prays for relief against Defendants as hereinafter set forth in his prayer for relief.

**FOURTH CAUSE OF ACTION**
**Violation of Mr. Karakostas' Civil Rights**
**42 U.S.C. § 1985**

146.    Mr. Karakostas hereby realleges and adopts each and every allegation in paragraphs 1-101 above as if fully set forth herein.

147.    Section 1985 provides a cause of action against public and private defendants who unlawfully conspire to deprive an individual of his constitutionally protected liberties. 42 U.S.C. § 1985(3) ("If two or more persons in any State or Territory conspire . . . for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws").

148.    The elements of the claim of conspiracy to violate civil rights under 1985 include (1) a conspiracy, (2) a conspiratorial purpose to deprive Mr. Karakostas of the equal protection of the laws or a constitutionally protected liberty, (3) an overt act in furtherance of the conspiracy, and (4) a deprivation of a constitutionally protected right. *See Perez-Sanchez v. Pub. Bldg. Auth.,* 531 F.3d 104, 107 (1st Cir. 2008).

149.    Defendants' COVID-19 vaccine mandate and its agreement, practice, or procedure to enforce its provisions in a discriminatory manner to deny Mr. Karakostas' request for a religious exemption constitutes a conspiracy to violate Mr. Karakostas' civil and constitutional rights based on his religious beliefs.

150.    On information and belief, Defendants reached an agreement to deprive Mr. Karakostas of equal protection of the laws, by denying him an exemption or accommodation for the exercise of his sincerely held religious beliefs.

151.    By conspiring to deny Mr. Karakostas' requests for religious exemption and reasonable accommodation, Defendants have breached an express or tacit agreement, practice, or procedure to deprive Mr. Karakostas of his constitutionally protected rights to equal protection and religious exercise.

152.    Defendants' agreement to deprive Mr. Karakostas of his constitutionally protected liberties is evidenced by the overt acts of Defendants' refusal to engage in good faith in the interactive process with Mr. Karakostas, and their act of violating his civil rights.

153.    By denying Mr. Karakostas his requested religious exemption, denying him reasonable accommodation, and terminating his employment because of the exercise of his sincerely held religious beliefs, Defendants' conspiracy has resulted in a deprivation of Mr. Karakostas' constitutionally protected rights based on his religious beliefs.

154.    By the aforesaid acts and conduct of Defendants and their employees, Mr. Karakostas has been directly and legally caused to suffer actual damages, as set out more fully below.

155.    By the aforesaid acts and conduct of Defendants and their employees, Defendants have caused, are causing, and will continue to cause irreparable harm and actual and undue hardship based on his religious beliefs.

156.    Mr. Karakostas has no adequate remedy at law for the continuing deprivation of their most cherished constitutional liberties and sincerely held religious beliefs.

157.     This Court is authorized to grant Mr. Karakostas' prayer for relief regarding costs, including reasonable attorney's fees, pursuant to 42 U.S.C. § 1988.

158.     Mr. Karakostas is entitled to other such relief as this Court deems appropriate.

WHEREFORE, Mr. Karakostas respectfully prays for relief against Defendants as hereinafter set forth in his prayer for relief.

**FIFTH CAUSE OF ACTION**
**Violation of the Massachusetts Fair Employment Practices Act**
**Massachusetts General Law Ch. 151B, § 4**
**Religious Discrimination**

159.     Mr. Karakostas hereby realleges and adopts each and every allegation in paragraphs 1-101 above as if fully set forth herein.

160.     At all times herein mentioned, M.G.L. c. 151B, *et seq*., the Fair Employment Practices Act ("**FEPA**"), was in full force and effect and was binding on Defendants, as Defendants regularly employed five (5) or more persons.

161.     Under the FEPA, M.G.L. c. 151B, § 4(1), it is an unlawful employment practice for an employer because of the religious creed of any individual to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment.

162.     Under the FEPA, M.G.L. c. 151B, § 4(1A), "[i]t shall be unlawful discriminatory practice for an employer to impose upon an individual as a condition of obtaining or retaining employment any terms or conditions, compliance with which would require such individual to violate, or forego the practice of, his creed or religion as required by that creed or religion . . . and the employer shall make reasonable accommodation to the religious needs of such individual. . . . [T]he words ''creed or religion'' mean any sincerely held religious beliefs, without regard to

whether such beliefs are approved, espoused, prescribed or required by an established church or other religious institution or organization."

163.     Under the FEPA, M.G.L. c. 151B, § 4(2), it is unlawful for a labor organization, because of the religious creed of an individual, to exclude from full membership rights or to expel from its membership an individual or to discriminate in any way against any of its members.

164.     Mr. Karakostas has a sincerely held religious belief that precludes him from receiving the COVID-19 vaccines, as outlined above.

165.     Mr. Karakostas' sincerely held religious beliefs conflict with Defendants' policies that require him to obtain the COVID-19 vaccine.

166.     Mr. Karakostas raised his sincerely held religious beliefs with Defendants, brought his objections and request for religious accommodation and exemption to Defendants' attention, and requested a religious exemption and accommodation from the COVID-19 vaccine mandate.

167.     By, *inter alia*, refusing to engage in the interactive process in good faith, at all points, Defendants violated its duties under FEPA and discriminated against Mr. Karakostas based on his sincerely held religious beliefs concerning the terms, conditions, and privileges of employment.

168.     Defendants have unlawfully discriminated against Mr. Karakostas by discharging him from the Local 537 Education Trust apprenticeship and expelling him from the Union membership for the exercise of his religious beliefs.

169.     Defendants' termination from the apprenticeship with only one year remaining, denial of benefits, including membership in the Union, and other adverse employment actions against Mr. Karakostas were motivated by, and are the result of, the exercise of his sincerely held religious beliefs.

170.    Defendants originally communicated through Ms. Harkins that the members of the Education Trust did not give any allowance for exemptions. Defendants then backtracked and allowed Mr. Karakostas to apply for a religious exemption but stated that a signature from a religious leader would be required for an exemption, in violation of FEPA. Counsel for Defendants, Paul Kelly, communicated on November 17, 2021, that Mr. Karakostas was denied an exemption because he identified no religion to which he is affiliated, in violation of FEPA. Defendants have provided no basis or justification to question the sincerity of Mr. Karakostas' religious beliefs. Defendants incorrectly and unlawfully assume that an employee is only qualified for a religious exemption if he is a member of an organized religion whose tenets condemn receiving the COVID-19 vaccine.

171.    Defendants lacked justification for the adverse employment actions taken against Mr. Karakostas, and said actions were neither based on job-related rationale nor consistent with business necessity.

172.    As a proximate result of the aforesaid acts of Defendants, Mr. Karakostas has suffered actual, consequential, and incidental financial losses, including without limitation, loss of salary and benefits, the intangible loss of employment-related opportunities in his field, and damage to his professional reputation, all in an amount subject to proof at the time of trial. Mr. Karakostas claims such amounts as damages pursuant to M.G.L. c. 151B, § 9 and/or any other provision of law providing for prejudgment interest.

173.    As a proximate result of the wrongful acts of Defendants, Mr. Karakostas has suffered and continues to suffer emotional distress, humiliation, mental anguish, and embarrassment, as well as the manifestation of physical symptoms resulting from the stress. Mr. Karakostas is informed and believes and thereupon alleges that he will continue to experience said

physical and emotional suffering for a period in the future not presently ascertainable, all in an amount subject to proof at the time of trial.

174.     As a proximate result of Defendants' wrongful acts, Mr. Karakostas has been forced to hire attorneys to prosecute his claims herein and has incurred and is expected to continue to incur attorneys' fees and costs in connection therewith. Mr. Karakostas is entitled to recover attorneys' fees and costs under M.G.L. c. 151B, §9.

175.     Mr. Karakostas is entitled to other such relief as this Court deems appropriate.

WHEREFORE, Mr. Karakostas respectfully prays for relief against Defendants as hereinafter set forth in his prayer for relief.

## SIXTH CAUSE OF ACTION
### Violation of the Massachusetts Fair Employment Practices Act
### Massachusetts General Law Ch. 151B § 4
### Retaliation

176.     Mr. Karakostas hereby realleges and adopts each and every allegation in paragraphs 1-101 above as if fully set forth herein.

177.     At all times herein mentioned, M.G.L. c. 151B, *et seq*., FEPA, was in full force and effect and was binding on Defendants, as Defendants regularly employed five (5) or more persons.

178.     M.G.L. c. 151B, § 4(4) makes it unlawful for any person, employer, labor organization or employment agency to retaliate through discharge, expel, or otherwise discriminate against any person who has opposed a discriminatory practice through filing a complaint.

179.     Defendants took adverse employment action against Mr. Karakostas because he engaged in the protected activities of requesting a religious accommodation and filing a charge of discrimination with the EEOC, including wrongfully discharging him from the Local 537 apprenticeship, expelling him from the Union membership, depriving him of financial

compensation and other benefits pursuant to membership with the Union, and intentionally interfering with Mr. Karakostas' prospective economic advantage.

180.    Defendants' termination from the apprenticeship with only one year remaining, denial of benefits, including membership in the Union, and other adverse employment actions against Mr. Karakostas occurred after Mr. Karakostas filed a complaint of religious discrimination with EEOC and obtained a Notice of Right to Sue letter.

181.    Defendants' actions constitute unlawful retaliation in violation of FEPA.

182.    As a result of Defendants' actions, Mr. Karakostas has suffered, and will continue to suffer, both economic and non-economic loss, including, but not limited to: loss of wages, benefits, pension, future pecuniary losses, emotional distress, and other compensatory damages.

183.    As outlined above, Defendants purposefully and intentionally retaliated against Mr. Karakostas based upon his opposition to Defendants' vaccine mandate and denial of his religious exemption request by taking adverse employment action against him. Mr. Karakostas is entitled to recover damages for future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and all other non-pecuniary losses caused by Defendants' unlawful retaliation.

184.    Defendants' actions described above were done with malice or reckless indifference to Mr. Karakostas' protected right to be free from retaliation for opposing unlawful employment practices. Due to the willful and malicious nature of the retaliation against Mr. Karakostas, he is entitled to an award of punitive damages in an amount sufficient to deter Defendants from engaging in retaliatory conduct in the future.

185.    As a proximate result of the wrongful acts of Defendants, Mr. Karakostas has suffered and continues to suffer emotional distress, humiliation, mental anguish, and

embarrassment, as well as the manifestation of physical symptoms resulting from the stress. Mr. Karakostas is informed and believes and thereupon alleges that he will continue to experience said physical and emotional suffering for a period in the future not presently ascertainable, all in an amount subject to proof at the time of trial.

186.    As a proximate result of the wrongful acts of Defendants, Mr. Karakostas has been forced to hire attorneys to prosecute his claims herein and has incurred and is expected to continue to incur attorneys' fees and costs in connection therewith. Mr. Karakostas is entitled to recover attorneys' fees and costs under M.G.L. c. 151B, § 9.

187.    Mr. Karakostas is entitled to other such relief as this Court deems appropriate.

WHEREFORE, Mr. Karakostas respectfully prays for relief against Defendants as hereinafter set forth in his prayer for relief.

**SEVENTH CAUSE OF ACTION**
**Violation of the Massachusetts Fair Employment Practices Act**
**Massachusetts General Law Ch. 151B § 4**
**Interference**

188.    Mr. Karakostas hereby realleges and adopts each and every allegation in paragraphs 1-101 above as if fully set forth herein.

189.    At all times herein mentioned, M.G.L. c. 151B, *et seq*., FEPA, was in full force and effect and was binding on Defendants, as Defendants regularly employed five (5) or more persons.

190.    M.G.L. c. 151B, § 4(4A) makes it unlawful for any person to coerce, intimidate, threaten, or interfere with another person in the exercise or enjoyment of any right granted or protected by FEPA, or to coerce, intimidate, threaten or interfere with such other person for having aided or encouraged any other person in the exercise or enjoyment of any such right granted or protected by FEPA.

191.     M.G.L. Ch. 151B § 4(5) It is unlawful for any person, whether an employer or an employee or not, to aid, abet, incite, compel, or coerce the doing of any of the acts forbidden under FEPA, or to attempt to do so.

192.     Defendants, through *deliberate disregard* for Mr. Karakostas' rights under FEPA, interfered with Mr. Karakostas' rights to practice his religious beliefs, deprived him of the interactive process following his request for a religious exemption, deprived him of his right to religious accommodation, discharged him from the Local 537 apprenticeship, expelled him from the Union membership, deprived him of financial compensation and other benefits pursuant to membership with the Union, and interfered with his prospective economic advantage, protected by FEPA.

193.     On information and belief, Defendants intentionally coerced and/or compelled and attempted to coerce and/or compel Mr. Karakostas to receive the COVID-19 vaccine in violation of his sincerely held religious beliefs by threats of discharge from the apprenticeship program and rescission of his Union membership.

194.     Through Siri & Glimstad, Mr. Karakostas notified the Defendants, through counsel, of their obligations under FEPA in correspondence dated December 2, 2021. In deliberate disregard for Mr. Karakostas' rights pursuant to FEPA, Defendants intentionally failed to act on Mr. Karakostas' behalf to correct the unlawful course of conduct in violation of FEPA. Moreover, Defendants continued their blatant disregard by discharging him from the apprenticeship and expelling him from the Union, thereby interfering with his rights protected by FEPA.

195.     Defendants' actions constitute unlawful interference and coercion in violation of FEPA.

196.    As a result of Defendants' actions, Mr. Karakostas has suffered, and will continue to suffer, economic and non-economic loss, including, but not limited to: loss of wages, benefits, pension, future pecuniary losses, emotional distress, and other compensatory damages.

197.    As outlined above, Defendants deliberately disregarded and intentionally interfered with Mr. Karakostas' rights pursuant to FEPA, by taking adverse employment action against him. Mr. Karakostas is entitled to recover damages for future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and all other non-pecuniary losses caused by Defendants' unlawful interference and coercion.

198.    Defendants' actions described above were done with malice or reckless indifference to Mr. Karakostas' protected right to be free from interference and coercion. Due to the willful and malicious nature of the interference and coercion against Mr. Karakostas, he is entitled to an award of punitive damages in an amount sufficient to deter Defendants from engaging in similar conduct in the future.

199.    As a proximate result of the wrongful acts of Defendants, Mr. Karakostas has suffered and continues to suffer emotional distress, humiliation, mental anguish, and embarrassment, as well as the manifestation of physical symptoms resulting from the stress. Mr. Karakostas is informed and believes and thereupon alleges that he will continue to experience said physical and emotional suffering for a period in the future not presently ascertainable, all in an amount subject to proof at the time of trial.

200.    As a proximate result of the wrongful acts of Defendants, Mr. Karakostas has been forced to hire attorneys to prosecute his claims herein and has incurred and is expected to continue to incur attorneys' fees and costs in connection therewith. Mr. Karakostas is entitled to recover attorneys' fees and costs under M.G.L. c. 151B, § 9.

201.    Mr. Karakostas is entitled to other such relief as this Court deems appropriate.

WHEREFORE, Mr. Karakostas respectfully prays for relief against Defendants as hereinafter set forth in his prayer for relief.

### EIGHTH CAUSE OF ACTION
#### Breach of Contract

202.    Mr. Karakostas hereby realleges and adopts each and every allegation in paragraphs 1-101 above as if fully set forth herein.

203.    Massachusetts law makes it unlawful for a union to breach a contract, the terms and conditions of which are expressed by the Union's constitution and bylaws. *See Sullivan v. Barrows,* 303 Mass. 197, 201 (Mass. 1939).

204.    A valid contract existed between the parties. Defendants offered Mr. Karakostas a five-year apprenticeship program to become a journeyman with the Local 537 United Association of Pipefitters Union. Mr. Karakostas accepted the offer with the consideration of four years of specific performance as an apprentice with the Local 537 Training Center.

205.    Defendants Coady and D.T. O'Brien signed the Constitution and By-Laws of Local 537 of 2018 and are members of the By-Law Committee.

206.    Each member and apprentice of Local 537 pledged that as a condition of membership in Local 537, he or she agrees to be governed by the Constitution and By-Laws. Mr. Karakostas signed this pledge at or near the time he commenced his apprenticeship.

207.    The United Association Constitution, Section 159, promises to "embrace and support[] the anti-discrimination laws of the United States."

208.    The Defendants each failed to perform their duties under the contractual agreement by discriminating against Mr. Karakostas on the basis of his religious beliefs, by denying him a

religious exemption to the COVID-19 vaccine mandate and therefore preventing him from completing his five-year apprenticeship to become a journeyman with Local 537.

209.    As a result of Defendants' breach of contract, it forced Mr. Karakostas to seek non-union employment at a significantly reduced wage, which will result in hundreds of thousands of dollars in lost wages over the course of his career.

210.    Mr. Karakostas is entitled to other such relief as this Court deems appropriate.

WHEREFORE, Mr. Karakostas respectfully pray for relief against Defendants as hereinafter set forth in his prayer for relief.

## NINTH CAUSE OF ACTION
### Breach of Promise

211.    Mr. Karakostas hereby realleges and adopts each and every allegation in paragraphs 1-101 above as if fully set forth herein.

212.    Defendants made a promise that it would not unlawfully prevent Mr. Karakostas from completing the requirements of the five-year apprenticeship program to become a journeyman with the Union.

213.    Defendants' promise to Mr. Karakostas induced him into foregoing alternative career and education opportunities to accept Defendants' offer of a five-year apprenticeship with Local 537 Education Trust.

214.    Mr. Karakostas did not pursue other educational opportunities by using the G.I. Bill he earned while serving in the United States Marine Corps.

215.    Mr. Karakostas did not pursue other employment opportunities available to him.

216.    Mr. Karakostas relied on the Defendants' promise that if he met the education and training requirements as an apprentice with Local 537 Education Trust and adhered to the Union

By-Laws and Constitution, he would be permitted to complete his five-year apprenticeship with Local 537 Education Trust.

217.    Mr. Karakostas requested a religious exemption from Defendants' COVID-19 vaccine mandate so that he could continue to perform according to the terms of his employment contract.  Mr. Karakostas intended to and was capable of finishing his commitment.

218.    Mr. Karakostas has dedicated substantial time and money to his continued career advancement within the Local 537 Education Trust and the Union.

219.    Defendants refused to engage in good faith in the interactive process with Mr. Karakostas. They denied his request for a religious exemption, thereby preventing Mr. Karakostas from continuing to perform his obligation of the employment contract and benefitting from the completed contract.

220.    United Association, under which Local 537 is organized, specifically advertises the apprenticeship program as one that evaluates "on the basis, without regard to . . . religious affiliation." The United Association Constitution states that it recognizes that "every member is entitled to just treatment and as a matter of policy, the United Association embraces and supports the anti-discrimination laws of the United States."

221.    Mr. Karakostas committed his career and livelihood to Local 537. He relied on its representations to provide "secure employment" and "just remuneration." Instead, Local 537 breached its obligation by imposing an arbitrary and capricious mandate upon Mr. Karakostas contrary to his sincere religious beliefs.

222.    Local 537's alteration of the terms of the apprenticeship as Mr. Karakostas approached his fourth year of a five-year program constitutes a material breach of contract, or at minimum, promissory estoppel pursuant to Massachusetts state law.

223.     This breach of promise has caused and is continuing to cause Mr. Karakostas to incur damage, loss, and harm, in an amount to be determined according to proof at the time of trial.

224.     Defendants' wrongful conduct for the breach of obligation arising from the promise of a five-year apprenticeship entitles Mr. Karakostas to an award of damages.

225.     Mr. Karakostas is entitled to other such relief as this Court deems appropriate.

WHEREFORE, Mr. Karakostas respectfully prays for relief against Defendants as hereinafter set forth in his prayer for relief.

**TENTH CAUSE OF ACTION**
**Breach of Implied Covenant of Good Faith and Fair Dealing**

226.     Mr. Karakostas hereby realleges and adopts each and every allegation in paragraphs 1-101 above as if fully set forth herein.

227.      By conspiring to deny Mr. Karakostas' request for religious exemption and reasonable accommodation, Defendants have breached an express or tacit agreement, practice, or procedure to deprive Mr. Karakostas of his constitutionally protected rights to equal protection and religious exercise.

228.     Defendants have engaged in an overt act to further the conspiracy to deprive Mr. Karakostas of his civil rights by failing to engage in the interactive process in good faith and terminating Mr. Karakostas' employment.

229.     Defendants' conduct alleged herein constituted a breach of the implied covenant of good faith and fair dealing as applied to Mr. Karakostas, as it frustrated Mr. Karakostas' ability to obtain the benefits expressly granted by his employment contract with Local 537.

230.     The foregoing breach of the covenant of good faith and fair dealing has caused and is continuing to cause Mr. Karakostas to incur damage, loss, and harm, in an amount to be determined according to proof at the time of trial.

231.     But for Defendants' breach of the implied covenant of good faith and fair dealing, which frustrated Mr. Karakostas' ability to perform the terms of his employment contract, Mr. Karakostas would continue to adhere to the terms of his employment contract with Defendants.

232.     Defendants' wrongful conduct for the breach of obligation arising from contract entitles Mr. Karakostas to an award of damages.

233.     Mr. Karakostas is entitled to other such relief as this Court deems appropriate.

WHEREFORE, Mr. Karakostas respectfully prays for relief against Defendants as hereinafter set forth in his prayer for relief.

## ELEVENTH CAUSE OF ACTION
### Breach of Duty of Fair Representation

234.     Mr. Karakostas hereby realleges and adopts each and every allegation in paragraphs 1-101 above as if fully set forth herein.

235.     Defendant Union has a duty to represent all members without hostility or discrimination toward any, and to exercise its discretion with complete good faith and honesty, and to avoid arbitrary conduct.  The duty of fair representation is breached when a union's conduct toward a member is arbitrary, discriminatory, or in bad faith. *See United Steelworkers of Am. v. Rawson,* 495 U.S. 362, 372-73 (1990); *Emmanuel v. Int'l Brotherhood of Teamsters, Loc. Union No. 25,* 426 F.3d 416, 420 (1st Cir. 2005). "A union acts in bad faith when it acts with an improper intent, purpose, or motive, and [b]ad faith encompasses fraud, dishonesty, and other intentionally misleading conduct." *Good Samaritan Med. Ctr. v. NLRB*, 858 F.3d 617, 630 (1st Cir. 2017).

236.     On information and belief, Mr. Karakostas' membership with the Union was rescinded in late January or early February of 2022.

237.     The termination of Mr. Karakostas' apprenticeship and Union membership was not justified because Mr. Karakostas engaged in the protected activity of requesting a religious

accommodation that Defendants wrongfully denied. Besides presenting an unpaid, arbitrary, and discriminatory extended leave of absence, Defendants failed to offer a single reasonable accommodation option or engage in good faith in the interactive process.

238.    The Union journeymen members are not subject to a vaccine mandate even though they are similarly situated to Local 537 Education Trust apprentices and work for many of the same contractors. For example, Mr. Karakostas has worked for American Refrigeration Company alongside Union journeymen, who are not required to be vaccinated. By not subjecting the Union journeymen members to a vaccine mandate, the Defendants effectively accommodate Union members on non-religious grounds. The double standard also makes Defendants' refusal to accommodate Mr. Karakostas in a way that would allow him to remain in the apprenticeship arbitrary and discriminatory.

239.    On information and belief, Defendants reached an agreement to deprive Mr. Karakostas of equal protection of the laws, by denying him an exemption or accommodation for the exercise of his sincerely held religious beliefs.

240.    Defendant Union acted arbitrarily, discriminatorily and in bad faith by expelling Mr. Karakostas from its membership for not being vaccinated, despite the fact that he applied for a religious exemption and articulated why the COVID-19 vaccine violates his sincerely held religious beliefs,  he has natural immunity from a prior SARS-CoV-2 infection, he worked alongside Union journeymen at American Refrigeration Company who are not required to be vaccinated, he was taught by Union journeymen instructors who are not required to be vaccinated and he was willing to follow all risk mitigating measures including masking, testing and social distancing.

241.    The foregoing breach of duty of fair representation has caused and is continuing to cause Mr. Karakostas to incur damage, loss, and harm, in an amount to be determined according to proof at the time of trial.

242.    Defendants' wrongful conduct for the breach of duty of fair representation entitles Mr. Karakostas to an award of damages.

243.    Mr. Karakostas is entitled to other such relief as this Court deems appropriate.

WHEREFORE, Mr. Karakostas respectfully prays for relief against Defendants as hereinafter set forth in his prayer for relief.

## PRAYER FOR RELIEF AND JURY DEMAND

WHEREFORE, Mr. Karakostas respectfully requests that this Court enter judgment in favor of Mr. Karakostas and against Defendants and:

    a.    Order Defendants to make Mr. Karakostas whole by providing appropriate backpay with prejudgment interest, in amounts to be determined at trial, and front pay, in amounts to be determined at trial, and other affirmative relief necessary to eradicate the effects of Defendants' unlawful employment practices.

    b.    Order Defendants to make Mr. Karakostas whole by providing compensation for past and future pecuniary losses resulting from the unlawful employment practices described above in an amount to be determined at trial.

    c.    Order Defendants to make Mr. Karakostas whole by providing compensation for past and future pecuniary losses resulting from the unlawful employment practices described above, including but not limited to emotional pain, suffering, inconvenience, loss of enjoyment of life, humiliation, and loss of civil rights, in an amount to be determined at trial.

d.  Order Defendants to pay Mr. Karakostas punitive damages for the intentional, reckless and/or egregious conduct described above, in an amount to be determined at trial. *See Haddad v. Wal-Mart Stores, Inc.,* 455 Mass. 1024 (2010).

e.  Order Defendants to reinstate Mr. Karakostas to the Local 537 apprenticeship with reasonable accommodation to the COVID-19 vaccine mandate.

f.  Order Defendants to designate Mr. Karakostas as eligible for Union membership.

g.  Order Defendants to report the hours completed by Mr. Karakostas during his four years as an apprentice with Local 537 to the Commonwealth of Massachusetts Division of Professional Licensing.

h.  Grant a permanent injunction enjoining Defendants, their officers, agents, servants, employees, successors, and assigns, and all persons in active concert or participation with them, from discriminating against applicants and current or future employees based on their religious beliefs and/or their refusal to violate their religious beliefs, including but not limited to, in their current and future employee vaccination policies.

i.  Grant a permanent injunction enjoining Defendants, their officers, agents, servants, employees, successors and assigns and all persons in active concert or participation with them from retaliating against applicants and current or future employees based on their opposition to any conduct made unlawful by Title VII and/or FEPA, including but not limited to, from terminating current or future employees based on their religious beliefs and/or their refusal to violate their religious beliefs, and as part of their current and future employee vaccination policies.

j.   Order Defendants to institute and carry out policies, practices, and programs which provide equal employment opportunities for all employees, including but not limited to effective policies prohibiting religious discrimination and allowing for appropriate religious accommodation as part of their current and future employee vaccination policies, all of which eradicate the effects of Defendants' past and present unlawful employment practices.

k.   Order Defendants to institute and carry out policies, practices, and programs which provide equal employment opportunities for all employees, including effective policies prohibiting retaliation, including but not limited to as part of their current and future employee vaccination policies, all of which eradicate the effects of Defendants' past and present unlawful practices.

l.   Grant a declaratory judgment that Mr. Karakostas does not owe, and will not in the future owe, any back payments for costs incurred as a result of Mr. Karakostas' participation in the Local 537 Training Center apprenticeship program.

m.   Grant such further relief as the Court deems necessary and proper in the public interest.

n.   Award attorneys' fees and costs of this action.

o.   Any such other relief as the Court may deem appropriate.

Plaintiff hereby demands trial by jury as to all triable claims.

Dated: March 15, 2022                          Respectfully submitted,


                                               By: ____*/s/ Ursula Smith*_____
                                               Ursula Smith (BBO# 688898)
                                               Christina Xenides (BBO# 677603)
                                               SIRI & GLIMSTAD LLP
                                               200 Park Avenue
                                               17th Floor
                                               New York, NY 10016
                                               usmith@sirillp.com
                                               cxenides@sirillp.com
                                               (212) 532-1091

                                               *Attorneys for Plaintiff*